IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARGARET DOLAN,                    :
         Plaintiff,               :     Case No. 06cv2365
                                   :
         v.                       :     (Judge Jones)
                                   :
COMMUNITY MEDICAL CENTER :
HEALTHCARE SYSTEM, a/k/a       :
COMMUNITY MEDICAL CENTER,:
INC., t/d/b/a                             :
COMMUNITY MEDICAL CENTER :
HEALTHCARE,                         :
         Defendant.               :

## MEMORANDUM AND ORDER

### August 8, 2007

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before this Court is a Motion to Dismiss Pursuant to Federal Rule

of Civil Procedure 12 ("the Motion"), filed by Defendant Community Medical

Center Healthcare System, a/k/a Community Medical Center, Inc., t/d/b/a

Community Medical Center Healthcare ("Defendant" or "CMC") on February 20,

2007.  (Rec. Doc. 8).  For the reasons that follow, the Motion will be denied.

## PROCEDURAL HISTORY:

On December 11, 2006, Plaintiff Margaret Dolan ("Plaintiff") initiated this

action by filing a Complaint.  (See Rec. Doc. 1).

1

On February 20, 2007, Defendant filed the instant Motion, which seeks

dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.  (Rec. Doc. 8).  As the Motion has been fully briefed,[1] it is ripe for

disposition.

**STANDARDS OF REVIEW:**

**A.      Review of Rule 12(b)(1) Motions**

It is well-established that subject matter jurisdiction is required in order for a

federal court to preside over a dispute.  See, e.g., Robinson v. Dalton, 107 F.3d

1018, 1020 (3d Cir. 1997).  Because subject matter jurisdiction determines a federal

court's ability to hear a case, in the disposition of a motion pursuant to Rule

12(b)(1), "the existence of disputed material facts will not preclude the trial court

from evaluating for itself the merits of the jurisdictional claims," id. (citation and

internal quotations omitted), and the plaintiff bears the burden of persuasion as to

any relevant factual disputes.  Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406,

1409 (3d Cir. 1991).  However, dismissal pursuant to Rule 12(b)(1) is appropriate

"[o]nly if it appears to a certainty that the pleader will not be able to assert a

colorable claim of subject matter jurisdiction."  Smith v. Social Security

---

[1] In the interest of completeness, we note that, in fact, a Sur-Reply was filed.  (Rec. Doc. 23).

<u>Administration</u>, 54 F. Supp. 2d 451, 453 (E.D. Pa. June 29, 1999).  <u>See also</u> <u>Kehr</u>

<u>Packages</u>, 926 F.2d at 1409 (reiterating that "'the threshold to withstand a motion

to dismiss under Rule 12(b)(1) is lower than that required to withstand a Rule

12(b)(6) motion.'" (quoting <u>Lunderstadt v. Colafella</u>, 885 F.2d 66, 70 (3d Cir.

1989))).

## B.      Review of Rule 12(b)(6) Motions

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept the veracity of a plaintiff's allegations.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S.

232, 236 (1974); <u>see</u> <u>also</u> <u>White v. Napoleon</u>, 897 F.2d 103, 106 (3d Cir. 1990).  In

<u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third

Circuit added that in considering a motion to dismiss based on a failure to state a

claim argument, a court should "not inquire whether the plaintiffs will ultimately

prevail, only whether they are entitled to offer evidence to support their claims."

Furthermore, "a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S.

41, 45-46 (1957); <u>see</u> <u>also</u> <u>District Council 47 v. Bradley</u>, 795 F.2d 310 (3d Cir.

1986).

## FACTUAL BACKGROUND:

The following recitation of the facts is based on the averments in Plaintiff's Complaint and accepted as true only for the purposes of disposition of that portion of the instant Motion which was filed pursuant to Rule 12(b)(6).[2]  (Rec. Doc. 1).

In or about September 2004, Defendant, which operates a hospital employing more than 100 persons in the city of Scranton, Pennsylvania, advertised, by means of a blind job listing on the website for the Society for Human Resources Management ("SHRM"), an employment vacancy for "a Vice President for Human Resources."  (Rec. Doc. 1, ¶¶ 6-8, 12).  Because Plaintiff, a female currently residing in Fredericksburg, Virginia, was qualified for the position, during or about September 2004, she responded to the listing by sending her resume to Cheryl Freedman ("Ms. Freedman"), a consultant with Tyler & Company.  Plaintiff did so at the direction of Defendant and because Tyler & Company was serving as an agent of Defendant for the purposes of screening applicants for the aforesaid employment vacancy.

Subsequently, but also sometime during September 2004, Ms. Freedman

_____

[2] Cognizant that insofar as this Memorandum and Order considers that portion of the Motion which was filed pursuant to Rule 12(b)(1), we may take into account information outside of the pleadings, we nevertheless see no reason to rely upon such information here because Defendant has presented no evidence to undermine Plaintiff's allegations that she and Defendant are citizens of different states and that the amount in controversy exceeds $75,000.  In fact, Defendant's challenge to subject matter jurisdiction is a purely legal one, which can be decided based upon the allegations in Plaintiff's Complaint and the Ordinance appended thereto.

initially screened Plaintiff during a telephone conversation.  After the conversation,

Tyler & Company requested that Plaintiff complete forms outlining salary history,

salary expectation, and other perquisites such as car allowance bonus and deferred

compensation.  Plaintiff did so, indicating, <u>inter alia</u>, salary expectations of

$175,000 per year.

Based upon Plaintiff's resume and the initial screening by Ms. Freedman,

Plaintiff was given a face-to-face interview with Dennis Kain ("Mr. Kain"), the

Senior Vice President of Tyler & Company on October 1, 2004.  At said interview,

Mr. Kain questioned Plaintiff about her experience and expertise in human resource

management and health care.

Following the interview with Mr. Kain, Plaintiff continued through the

recruitment process during October and November 2004, including appearing at

Defendant's facility in Scranton for an interview on November 9, 2004.  Plaintiff

also returned to Defendant's Scranton facility for additional interviews on

December 14-16, 2004.

In fact, on December 16, 2004, Plaintiff met with Barbara Bossi ("Ms.

Bossi"), Defendant's Senior Vice President of Patient Care Services and

Operations.  During the meeting, Plaintiff stated something to the effect of although

she was "seeking a salary of $175,000 annually, all things are negotiable."  <u>Id.</u> at ¶

26.  Thus, she requested that "Defendant put its best foot forward with regard to this term."  Id.  As Plaintiff and Ms. Bossi were leaving the interview, Ms. Bossi "expressed her excitement with Plaintiff joining the CMC team and assured Plaintiff that an offer of employment was forthcoming."  Id. at ¶ 27.  Later, Plaintiff disclosed[3] to Ms. Bossi that "her sexual orientation was female homosexuality, as that term is defined at Paragraph 2 (25) of the Comprehensive Scranton Relations Ordinance, 243 of 2003" ("the Ordinance").[4]  Id. at ¶ 28.

On January 13, 2004, Mr. Kain informed Plaintiff that Defendant would not be hiring her and stated that the reason therefor was Defendant could not meet Plaintiff's salary requirements.  Plaintiff avers that this reason was pretextual, and cites as evidence in support thereof the fact that during her interviews and meetings associated with the recruitment process, no negotiation of salary was undertaken.

Moreover, Plaintiff asserts that her sexual orientation is the true reason that she was not hired by Defendant.  In support of this assertion, Plaintiff indicates that the position for Vice President for Human Resources remained open after Plaintiff

---

[3]  Prior to December 16, 2004, no agent, officer, or employee of Defendant was aware of Plaintiff's sexual orientation.  Id. at ¶ 29.

[4]  A copy of the Ordinance was appended to Plaintiff's Complaint (see doc. 1-2), and thus, may be considered by this Court in our disposition of that portion of the Motion brought pursuant to Rule 12(b)(6).

was informed that she had not been selected.  In addition, or in the alternative, Plaintiff asserts that the person ultimately selected for the position was not homosexual.

Because Plaintiff was not selected for the position, on or about July 11, 2005, she filed a written complaint with the Human Relations Commission of the City of Scranton ("the Commission"), pursuant to the Ordinance, which alleged unlawful discrimination on the basis of sexual orientation.  Moreover, Plaintiff avers that "[m]ore than one year has elapsed since the filing of the charge, and the Commission has not entered into a conciliation agreement to which the Plaintiff is a party."  Id. at ¶ 10.  Additionally, Plaintiff indicates that she has received some sort of notice from the Commission.  Id.

**DISCUSSION:**

Plaintiff's Complaint contains only one (1) Count, which alleges that Defendant violated the Ordinance by discriminating against Plaintiff, in the terms and conditions of employment, on the basis of her sexual orientation.  Id. at 6.

In the instant Motion (doc. 8) and supporting briefs (doc. 14, 20), Defendant seeks dismissal of the Complaint on multiple grounds: 1) this Court lacks subject matter jurisdiction because the Ordinance affords aggrieved individuals the right to bring actions thereunder in the Court of Common Pleas for Lackawanna County; 2)

7

the Complaint fails to state a claim because the Ordinance protects only Scranton residents, and thus, Plaintiff, a non-Scranton resident, lacks standing;[5] and 3) in the alternative, abstention is appropriate under the Burford, Thibodaux, and Pullman doctrines. Plaintiff counters that this Court should continue to preside over this action because: 1) diversity jurisdiction under 28 U.S.C. § 1332 exists; 2) the Complaint does not fail to state a claim because despite being a non-Scranton resident, Plaintiff has standing as the term is defined under the Constitution; and 3) abstention on any basis is inappropriate because Plaintiff seeks monetary damages.[6] (See Rec. Docs. 17, 23).

Taking the issues in sequence, we begin our analysis by considering the fundamental question of whether we have subject matter jurisdiction over the instant action.

Initially, we note that Article III, Section 2 of the Constitution outlines the circumstances under which federal courts have subject matter jurisdiction; it

---

[5] Defendant's Motion (doc. 8) also sought dismissal for failure to state a claim based on Plaintiff's alleged failure to exhaust administrative remedies. However, the absence of argument thereto in the supporting briefs (docs. 14, 20) demonstrates that Defendant has elected not to persist in said argument. Accordingly, as to Defendant's failure to state a claim argument, we consider only whether Plaintiff has standing.

[6] Although we appreciate both parties' thorough arguments in the extensive briefing on this Motion, we see no reason to outline them in greater detail here because, as will be seen below, our analysis contains references thereto therein.

provides in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made . . . [and] to Controversies between . . . Citizens of different States . . . ."  Const. Art. III, § 2, cl. 1.  Thus, for federal courts to have subject matter jurisdiction over civil actions, they must be able to exercise either federal question jurisdiction or diversity jurisdiction.  See 28 U.S.C. §§ 1331-1332.  As Plaintiff's Complaint raises no cause of action grounded in federal law, the sole provision under which we may have jurisdiction is 28 U.S.C. § 1332, which indicates that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) Citizens of different States . . . ."  28 U.S.C. § 1332(a).

On its face, Plaintiff's Complaints satisfies the requirements of 28 U.S.C. § 1332(a) because it alleges that "[t]he amount in controversy in this matter exceeds seventy[-]five thousand dollars ($75,000.000)" (doc. 1, ¶ 4) and that Plaintiff is a citizen of Virginia, while Defendant is a citizen of Pennsylvania.  Indeed, although Defendant challenges this Court's subject matter jurisdiction, for the purposes of this Motion, it does not challenge the veracity of the above averments.  (See, e.g., Rec. Doc. 14 at 13 ("this Court, sitting only in diversity . . . .")).

9

Rather, citing two non-binding and unpersuasive[7] authorities (docs. 14 at 6; 20 at 2-3), Defendant argues that because the Ordinance states that "the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth . . . " and a letter from the Commission to Plaintiff's counsel states that "you are hereby notified that Ms. Dolan is permitted to proceed in the Court of Common Pleas of Lackawanna County . . . ," this Court lacks subject matter jurisdiction.  Thus, as Plaintiff notes, Defendant essentially "argues that the ordinance trumps the United States Constitution and divests federal courts of jurisdiction."  (Rec. Doc. 17 at 2).

---

[7] Harleysville Mutual Insurance Company v. The Catastrophic Loss Trust Fund, 515 A.2d 1039 (Pa. Commw. Ct. 1986), is inapplicable here because it did not consider the issue of federal subject matter jurisdiction.

James v. International Business Machines Corp., 1991 WL 86918 (E.D. Pa. May 20, 1991), is also unpersuasive because its dicta, indicating that claims pursuant to the Pennsylvania Human Relations Act ("PHRA") may only be brought in state courts, appears to be an anomaly.  See Kahn v. American Heritage Life Ins. Co., 2006 U.S. Dist. LEXIS 45749, at *15-16 (E.D. Pa. June 29, 2006) (noting that "PHRA claims have been brought in other forums without jurisdictional challenge, including courts outside the Commonwealth of Pennsylvania . . . although the PHRA specifies the courts of common pleas of the Commonwealth as an allowable forum for adjudication of PHRA claims, such jurisdiction has not been found to be exclusive and would not prevent Plaintiff from bringing PHRA claims in federal or state court in Florida." (internal citations omitted)).  See also Fogleman v. Mercy Hosp., 283 F.3d 561 (3d Cir. 2002) (examining the propriety of the district court's grant of summary judgment on plaintiff's claims under the ADA, ADEA, and PHRA, without any suggestion that the PHRA's grant of jurisdiction to Pennsylvania state courts was exclusive or that federal courts do not have subject matter jurisdiction over PHRA claims).  Indeed, as was apparently the situation in Kahn, we think that in circumstances where the requisites of diversity and personal jurisdiction are present, federal courts have jurisdiction over actions which involve only PHRA claims.  2006 U.S. Dist. LEXIS 45749, at *7-9, *14-16.

We find Defendant's argument unpersuasive because, as a colleague from

Connecticut has noted:

> "In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction." <u>Grand Bahama [Petroleum Co. v. Asiatic Petroleum Corp.]</u>, 550 F.2d [1320, 1325 (2d Cir. 1977)] (quoting <u>Markham v. Newport News</u>, 292 F.2d 711, 713 (4th Cir. 1961)).
> Article 3, Section 2 of the United States Constitution provides that the judicial power of the United States shall extend to controversies between citizens of different states.  Congress, in 28 U.S.C. Section 1332, extended such jurisdiction to the United States District Courts.  A state "door closing" statute cannot divest the district court of jurisdiction when the statutory and constitutional requirements of diversity are satisfied.

<u>Elgard Corp. v. Brennan Constr. Co.</u>, 1994 U.S. Dist. LEXIS 15603, at *4-5 (D.

Conn. July 24, 1994).  In so concluding, <u>Elgard</u> also relied upon <u>Railway Co. v.

Whitton's Administrator</u>, 80 U.S. 270, 286 (1872), which provides:

> In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties.  It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court
> . . . Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

<u>Id.</u>  Although we are cognizant that exceptions to this principle may exist, such as

the judicial recognition of exclusive jurisdiction in administrative agencies for certain

periods, we think the general principle remains sound and applicable here.  <u>See</u>

11

<u>MCI Telecomms. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1109 (3d Cir. 1996)

(Nygaard, J., concurring) (collecting historic and contemporary authorities that

stand for this proposition).  Moreover, logic dictates that as state statutes cannot

divest federal courts of jurisdiction, neither can local ordinances.

Thus, in view of the plain language of the Constitution and 28 U.S.C. § 1332,

and because Defendant does not challenge Plaintiff's allegations as to the amount in

controversy or citizenship of the parties, we find unpersuasive Defendant's

argument that we lack subject matter jurisdiction.  Accordingly, we will not dismiss

Plaintiff's Complaint for lack of jurisdiction.

Next, we turn to Defendant's argument that Plaintiff's Complaint fails to state

a claim because Plaintiff lacks standing.  As the Supreme Court has stated,

> [i]n its constitutional dimension, standing imports justiciability: whether the
> plaintiff has made out a "case or controversy" between himself and the
> defendant within the meaning of Art. III . . .  As an aspect of justiciability, the
> standing question is whether the plaintiff has "alleged such a personal stake
> in the outcome of the controversy" as to warrant his invocation of federal-
> court jurisdiction and to justify exercise of the court's remedial powers on
> his behalf.

<u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975).  As Plaintiff is attempting to seek

recompense for Defendant's alleged discrimination, under the Ordinance, against

her, she clearly has standing under the principles outlined above.[8]

Moreover, upon consideration of Defendant's argument that the text of the Ordinance does not afford non-Scranton residents a remedy, we find it unpersuasive for several reasons.  First, in contrast to the one clause in the "Purpose" section upon which Defendant relies, "it is the express intent of this article to guarantee fair and equal treatment under law to all people of the City" (doc. 1-2 at 1), several other provisions in the Ordinance are more inclusive.  For example, the initial clause in the "Purpose" section provides "[i]n order to assure that all persons . . . ."  Id. at 1.  Perhaps more significantly, those portions of the Ordinance that render discrimination in employment unlawful, and prescribe the procedure by which persons alleging discrimination may file a complaint, contain broad language, such as "such individual" and "any individual," and lack language restricting remedy to Scranton residents.  (Rec. Docs. 1-2 at 5; 1-3 at 2).  Second, interpreting such broad language as limiting application of the Ordinance to Scranton residents would be inappropriate given the Scranton City Council's

---

[8] We find the authorities that Defendant cites to support the opposite conclusion inapposite: Muir v. Alexander, 858 A.2d 653, 655 n.3 (Pa. Commw. Ct. 2004), noted the unsurprising conclusion that where the statute at issue defined "requester" as "[a] person who is a resident of the Commonwealth," a school district would not have standing to so request, and Hartman v. City of Allentown, 880 A.2d 737 (Pa. Commw. Ct. 2005), held that municipalities have the authority to enact anti-discrimination statutes without considering the scope of their application.

demonstrated ability to expressly exclude certain groups from the definition of "employee" (doc. 1-2 at 2), and failure to so exclude non-residents, as well as the Ordinance's provision stating that the Ordinance "shall be construed liberally . . ." (doc. 1-3 at 7).  Third, we agree with Plaintiff's contention that interpreting the Ordinance as applicable to only Scranton residents would lead to absurd results, such as Scranton businesses being permitted to discriminate against non-residents who enter the city to conduct business.[9]  (See Rec. Doc. 17 at 13).

As we will not dismiss Plaintiff's Complaint for failure to state a claim, we turn to consideration of whether we should abstain from exercising jurisdiction, and, thus, dismiss Plaintiff's Complaint on that basis.  Prior to any discussion of the specific requirements under the Burford, Thibodaux, and Pullman doctrines, we consider the threshold question of whether abstention is permissible under the instant circumstances.

Upon our thorough review of the parties' arguments, and the authorities cited in support thereof, we conclude that neither abstention nor imposition of a stay, sought in Defendant's Reply Brief, is appropriate under these circumstances.  We so conclude, in part, because abstention "is an extraordinary and narrow exception

---

[9] We think it highly unlikely that the City Council would wish to discourage those living outside of Scranton from supporting the city's economy.

14

to the duty of a District Court to adjudicate a controversy properly before it."

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813

(1976).  As the Court of Appeals for the Third Circuit has recently reiterated:

> Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue.  The doctrine is rooted in concerns for the maintenance of the federal system and represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004) (citations

and internal quotations omitted).

In our view, abstention under the instant circumstances would constitute an

abrogation of our obligation to exercise jurisdiction because binding precedent

demonstrates that invocation of this narrow exception is improper where only

monetary relief is sought, Quackenbush v. Allstate Insurance Co., 517, U.S. 706,

731 (1996), and that staying a case wherein both legal and equitable relief are sought

is proper when simultaneous state court proceedings are pending, Feige v.

Sechrest, 90 F.3d 846, 850 (3d Cir. 1996).  See also Covance Labs., Inc. v.

Orantes, 338 F. Supp. 2d 613, 619 (D. Md. 2004) (concluding that where state

proceedings were also occurring, imposition of a stay reaches a proper balance of

the policies favoring abstention and those favoring exercise of federal jurisdiction).

In this action, no state court proceedings related hereto appear to be pending. (<u>See</u>, <u>e.g.</u>, doc. 17 at 8 ("Plaintiff does not seek review of any order or procedures issued by the Scranton Commission, but instead has simply – as she is entitled to do under the ordinance – brought a <u>de novo</u> discrimination claim.")).  Thus, we see no justification for abstaining or for staying the instant proceedings, in which Plaintiff seeks, <u>inter alia</u>, monetary damages.[10]

For all of the foregoing reasons, we will deny the Motion in its entirety.[11]

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.     Defendant's Motion to Dismiss (doc. 8) is hereby **DENIED**.




<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge

---

[10] Accordingly, we need not apply the instant circumstances to the various abstention doctrines.

[11] As a matter of course, we express no opinion on the ultimate viability of Plaintiff's claim.